Filed 11/18/21  P. v. Preston CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Yolo)

----

| | |
|---|---|
| THE PEOPLE, | C091287 |
| Plaintiff and Respondent, | (Super. Ct. No. CRF173393) |
| v. | |
| GREGORY THOMAS PRESTON, | |
| Defendant and Appellant. | |

A jury found defendant Gregory Thomas Preston guilty of several crimes related to an incident of domestic violence.  The trial court sentenced defendant to an aggregate term of 10 years in state prison.  On appeal, defendant contends the trial court abused its discretion in denying his motion for mistrial.  We find no abuse of discretion and affirm the judgment.

1

BACKGROUND

A.    *Factual Background*

Defendant and A.V. began dating in July 2012; they moved in together in December 2012. By 2013, despite frequent arguments, they were talking about marriage. Then, in May 2014, an argument that began as verbal insults escalated to physical abuse. Defendant head-butted A.V., leaving a "gash" above her eye, and punched her repeatedly in the face. Defendant took A.V. to the hospital and left her there; he threatened to break her jaw unless she told hospital personnel she fell in the shower. A.V. was afraid of defendant so she complied.

The day after being beaten by defendant, a coworker noticed A.V.'s injuries. A.V. told her what happened and the coworker encouraged A.V. to file a police report, which A.V. did. Photos were taken of the injuries A.V. sustained when defendant punched her in the face. The photos show stitches above her left eyebrow and a black eye, as well as marks above her lip. Following the physical abuse, A.V. ended her relationship with defendant.

Two years later, A.V. reached out to defendant on social media; she wanted "closure," maybe an "apology." After several weeks of contact over social media and eventually in person, defendant and A.V. resumed a sexual relationship. At first, the relationship was "passionate and lovey-dovey again," but soon the arguing resumed.

By February 2017, A.V. and defendant's relationship had become "[v]ery volatile, aggressive[,] and toxic." One day, A.V. picked defendant up at the train station and, as she drove from the station, they began to argue. The argument escalated and defendant began choking A.V. while she was driving. Panicked, A.V. "slammed on the brakes" and pulled off the freeway. After she was able to calm down, A.V. continued to drive them to Lake Tahoe where the two spent the weekend together. A.V. did not report the incident to the police.

About a month later, defendant and A.V. spent the weekend together in different hotels for a friend's wedding. The weekend began in the first hotel with nothing but fighting, so defendant went to the wedding by himself. After the wedding, on March 5, 2017, they moved to a different, more affordable hotel. Shortly after checking in, defendant and A.V. began fighting again.

The fight started over money and escalated into defendant calling A.V. "a fat nigger-loving whore, . . ." At that point, A.V. tried to leave the hotel room but defendant blocked her exit and said, "You're not going anywhere. You're not fucking going anywhere." After multiple failed attempts to leave the room, A.V. tried to escape to the bathroom but defendant stood in the doorway and continued to argue with her.

After a while, things calmed down and A.V. was able to walk out of the bathroom. But the calm did not last and they started arguing again. At that point, defendant pushed A.V. "down on the bed and got on top of [her] and put his forearm, . . . across [her] throat and repeatedly punched [her] in the left side of [her] head with his right hand." Defendant punched A.V. in the head "[b]etween five and ten" times; she called out for help but the person (or persons) in the adjacent room simply turned up their television.

For a moment, defendant stopped beating A.V. and sat opposite her in a chair; she remained seated on the bed. Defendant apologized to A.V. but moments later, he stood up, got behind A.V., put her in a headlock, and dragged her off the bed. A.V. told defendant to stop; she grabbed at his arm and he eventually let her go but then he ripped off her shirt, wrapped it around her neck, and began to choke her with it. A.V. struggled to breathe; she began to panic, thinking "this is how I'm going to die . . . my daughter is never going to see me again."

Defendant released his grip on A.V.'s shirt and put her back in a headlock. A.V. dropped to all fours and defendant began punching her in the head again. A.V. could not breathe, she could not speak, and she could not scream. A.V. fell to her stomach with defendant on her back and she lost consciousness. When she came to, A.V. was

3

panicking. She believed if she did not get out of the room, defendant would kill her; however, she did not try to escape because she "knew [defendant] would come after [her]." So, she told defendant the neighbors called the police.

Defendant put his shirt on A.V. and walked her out of the hotel. They got into A.V.'s car and drove to a parking lot across the street. When they saw law enforcement approach a neighboring motel, defendant wanted to leave. They drove to a casino where they sat in the parking lot for 20 to 30 minutes before returning to the motel to sleep.

The next morning, A.V. took defendant to the train station. Then she called the police.

B.    *Procedural Background*

The People charged defendant with domestic violence (Pen. Code, § 273.5, subd. (a))[1] and alleged a prior domestic violence conviction within the past seven years (§ 273.5, subd. (f)(1)). The People also charged defendant with false imprisonment with force or violence (§§ 236, 237, subd. (a)), assault by means of force likely to cause great bodily injury (§ 245, subd. (a)(4)), and misdemeanor contempt of court by contacting persons protected by a court order, resulting in physical injury to the protected person (§§ 166, subds. (c)(1), (2)). The People alleged defendant was previously convicted of a serious felony (§§ 667, subds. (c), (e)(1)), and served a prior prison term (§ 667.5).

Before trial, the trial court heard several motions by the parties including the prosecutor's motion to introduce prior acts of domestic violence occurring in February 2017 and May 2014, pursuant to Evidence Code sections 1101 and 1109. Defendant opposed the motion. The court ruled on the prosecutor's motion as follows: "I will allow evidence of the 2014 and 2017 incidents under 1109. I see no reason to have a 402 hearing on this issue. I will give a limiting instruction on the time—at the time we

---

[1]    Undesignated statutory references are to the Penal Code.

4

instruct the jury.  [¶]  As to the 1101 issue, it's basically moot and unnecessary since I'm allowing it in under 1109."

Concerned that A.V. would not comply with the court's ruling, and would raise additional acts of domestic violence, defendant's counsel asked for an order compelling the prosecutor to remind her witnesses to talk about only the domestic violence incidents that occurred in May 2014 and February 2017.  The court agreed:  "please make sure to remind your witnesses prior to their testimony, particularly the alleged victim, the only acts that are coming in are the 2014 incident and the 2017 incident and, of course, the current charge.  If there happens to be other incidents, they should not make reference to them."  The prosecutor agreed.

During her opening statement, the prosecutor described A.V. as a young woman looking for love, looking to be married, and to live happily ever after.  A.V.'s relationship with defendant, however, would not manifest in happily ever after; rather, "the year 2012 marked the beginning of her nightmare, . . . "  By 2014, "after having dated . . . defendant, after . . . defendant beat her, she knew she should have left [him]."

During her testimony, A.V. said her relationship with defendant began as "lovey-dovey."  They were "happily in love" when they moved in together; they even talked about getting married.  But a marriage never materialized because after moving in together the relationship became "violent and abusive."

When A.V. testified about defendant punching her in the head and face in May 2014, the prosecutor asked A.V. why she reported the abuse despite defendant's threat to break her jaw if she did.  A.V. explained a coworker had seen her injuries and did not believe A.V.'s story that she had fallen.  The coworker told A.V. she had seen A.V. come to work "covered in bruises more than once."  Defendant's counsel objected and moved to strike the testimony.  The court sustained the objection and struck the testimony: "That last comment is stricken from the record and will just be disregarded by the jury.  It is not evidence."

5

Following that objection, and outside the presence of the jury, defendant's counsel moved for a mistrial. Counsel argued the prosecutor's opening remarks about defendant and A.V. being in a violent relationship gave the jury the impression "that this was like a—from 2012 until 2017, this was an ongoing violent relationship over and over and over again from the opening."

Moreover, counsel argued, A.V.'s testimony that their relationship, which started out "lovey-dovey" became "violent and abusive," violated the court's order because it suggested to the jury violence before the May 2014 incident of abuse. And, "the final needle," as counsel described it, was A.V.'s testimony that her coworker said she had seen A.V. come to work prior to May 2014, covered in bruises. "The obvious insinuation is that [A.V.] was getting beat up all the time by [defendant]."

In response, the prosecutor noted she had advised A.V. about the court's ruling related to prior acts of domestic violence, defendant's parole status, and his prior prison sentence. She believed A.V. was doing "the best she could." The prosecutor also explained that during her opening statement, when she referred to the ongoing abuse in defendant and A.V.'s relationship, she was referring only to the three incidences allowed by the court. She alluded to no other incidents.

The court denied defendant's motion. "I found nothing offensive in [the prosecutor's] opening statement where she said that this was a violent relationship. It was, in fact, a violent relationship at times, at least that is what the evidence will show. She made clear that the—that there were two incidents before the charged crime in this case. [A.V.] did not testify on other abuse. What she said is what her coworker told her." The court explained that A.V.'s testimony about what her coworker said was objectionable in any event because it was hearsay. The court struck that testimony accordingly and instructed the jury to disregard it.

The court found nothing in the opening statement or A.V.'s testimony caused defendant any prejudice: "I don't think it prejudices [defendant] because all that was

6

stricken was a coworker's statement. There wasn't any testimony from [A.V.] about what she experienced in yet another violent confrontation. So we're limited in this case to the facts of the charge and the two prior incidents will come in."

Defendant's counsel was not convinced the jury would disregard A.V.'s stricken testimony. The court offered to tell the jury "that [he] struck the statement from the coworker because it's not evidence, it's not relevant[,] and it's hearsay." Counsel was not satisfied: "I think the implication is already there to the jury.

"THE COURT: I don't agree and a mistrial is denied."

When the jury reconvened, the court instructed them accordingly: ". . . when we ended the morning's session, I told you to strike and disregard those comments from a coworker. That is stricken and will be disregarded. It's irrelevant. It's hearsay. It's not evidence. Don't consider those comments of the—of the coworker."

The jury found defendant guilty as charged. The sentencing enhancement allegations also were found true. The trial court subsequently sentenced defendant to an aggregate term of 10 years in state prison.

DISCUSSION

Defendant argues the trial court prejudicially erred and abused its discretion in denying his motion for a mistrial as "both the prosecutor and the victim characteriz[ed]" his relationship with the victim "as having been abusive all along, in violation of the court's previous ruling excluding all evidence of prior uncharged arrests or bad acts apart from the 2014 and 2017 incidents . . . ." We are not persuaded.

"A trial court should grant a motion for mistrial 'only when " 'a party's chances of receiving a fair trial have been irreparably damaged' " ' [citation], that is, if it is 'apprised of prejudice that it judges incurable by admonition or instruction' [citation]. 'Whether a particular incident is incurably prejudicial is by its nature a speculative matter, and the trial court is vested with considerable discretion in ruling on mistrial motions.' [Citation.] Accordingly, we review a trial court's ruling on a motion for mistrial for

7

abuse of discretion." (*People v. Avila* (2006) 38 Cal.4th 491, 573.) A trial court abuses its discretion when it exercises its " ' "discretion in an arbitrary, capricious, or patently absurd manner that result[s] in a manifest miscarriage of justice." ' " or when its ruling " 'falls outside the bounds of reason.' " (*People v. Bryant, Smith and Wheeler* (2014) 60 Cal.4th 335, 390.)

Defendant contends that during her opening statement, the prosecutor violated the court's pretrial order when she said that despite a good start, defendant and A.V.'s relationship was a "nightmare." Defendant argues this suggested to the jury that defendant beat A.V. "continuously throughout the relationship . . . ." Nothing in the prosecutor's statement indicates any incident of violence other than the three allowed into evidence by the trial court: the May 2014 incident, the September 2017 incident, and the incident giving rise to the charges. These three incidents of violence, which occurred over the span of a relationship, that collectively lasted for less than three years could reasonably be characterized as a "nightmare" for A.V. We thus conclude these remarks did not violate the trial court's order and did not prejudice defendant.

Defendant also continues to pursue trial counsel's claim that the trial court did not do enough to rectify damage done to defendant's case as a result of A.V.'s testimony that her coworker said she had seen A.V. come to work before covered in bruises. We disagree. The trial court not only sustained trial counsel's objection to that testimony, but also struck the statement from the record and twice instructed the jury to disregard it. Absent evidence to the contrary, we presume jurors will follow a court's admonitions and instructions. (*People v. Houston* (2005) 130 Cal.App.4th 279, 312.)

In sum, we conclude the trial court's decision to deny defendant's motion for a mistrial was not arbitrary, capricious, or patently absurd, but fell well within the bounds of reason. (*People v. Bryant, Smith and Wheeler, supra*, 60 Cal.4th at p. 390.)

## DISPOSITION

The judgment is affirmed.

                                        \s\                        ,
                                        BLEASE, Acting P. J.


We concur:


     \s\                        ,
HULL, J.


     \s\                        ,
KRAUSE, J.

9